UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| MYLISSA FARMER,<br><br>Plaintiff,<br><br>vs.<br><br>THE UNIVERSITY OF KANSAS HOSPITAL AUTHORITY,<br><br>Defendant. | ) | Case No. 2:24-CV-02335 |

**DEFENDANT UNIVERSITY OF KANSAS HOSPITAL AUTHORITY'S REPLY IN SUPPORT OF MOTION TO DISMISS**

The first sign of weakness in Plaintiff's response was that she dedicated the first two pages (after receiving an extension of page limits) to an unfounded and unsupported attack on the character of her health care providers gets into the public record. That says much about the merits of the claims and the true motivations behind bringing them. Furthermore, Plaintiff's response fails to address the enumerated paragraphs in Defendant's motion and instead submits a narrative that makes reply impossible. If the Court reviews the citations within that narrative, it will discover that many of Plaintiff's representations are not supported by the purported citations. In short, Plaintiff's own allegations are ever-changing and internally inconsistent, and ultimately lack merit. If the Plaintiff herself does not even know what she alleges, it is not the Court's role to figure it out for her. It should dismiss the allegations.

**ARGUMENT AND AUTHORITIES**

**I. Plaintiff's new theory – that Ms. Farmer *might* have had more than one emergency medical condition at the time of presentation – would still fail to state a "failure to screen" claim under EMTALA.**

In her response, Plaintiff contradicts her own prior allegations and apparently constructs an entirely new set of facts designed to give the impression that Ms. Farmer was in labor at the

time she presented to the UKH emergency department. (Doc. 32, p. 16.) Yet the allegation that her providers failed to "induce labor" as a means of pregnancy termination remains. (Id, p. 15.) This does not make sense. Regardless, Plaintiff appears to quote from her prior administrative complaint as though to demonstrate consistency in her story. (Doc. 32, p. 8.) A review of that complaint demonstrates that Plaintiff alleged that contractions **began** on August 5, 2022, and that word has been omitted from the quoted sentence stated in this response. (See Doc. 18-2, p. 18.) Now, Plaintiff quotes only the latter portion of that sentence and alleges that severe pain and contractions **continued** through August 5, 2022. (Doc. 32, p. 8.) This speaks for itself.

Plaintiff also selectively truncates EMTALA and declares that "labor is itself an [emergency medical condition] if transferring or discharging the laboring patient 'may pose a threat to the health or safety of the woman or the unborn child." (Id, p. 17.) The cited section appears in the definitions subsection of EMTALA, but Plaintiff omits the first sentence: "With respect to a pregnant woman *who is having contractions*". The subsections that follow declare that an "emergency medical condition" exists when the woman is having contractions and there is inadequate time to *transfer* before delivery will occur, or that *transfer* may endanger the mother or the unborn child. (42 U.S.C. § 1395dd(e)(1)(B)). This section does not refer to "discharge," as Plaintiff claims, nor does it have any application to this case regardless.

In at least one prior case, this Court has noted the proper legal analysis applied to this claim:

> "A hospital…fulfills its examination requirement by using its standard screening procedures. But a slight deviation or de minimis variation from standard procedure is not sufficient to show an actionable violation of policy. And it doesn't matter if the standard procedures are inadequate; the only question is whether the hospital adhered to them." *Koel v. Citizens Med. Ctr., Inc.*, 2023 U.S. Dist. LEXIS 181916, *15-16 (D. Kan. Oct. 10, 2023) (internal citations omitted.)

Here, Plaintiff appears to make much of two specific allegations: that no temperature was

recorded, and no full pain assessment was recorded.[1] Plaintiff then claims that these are part of any standard assessment, and the absence of recorded information concerning those assessments means the hospital violated EMTALA by deviating from its standard procedures. From there, she seems to suggest that it does not matter whether Ms. Farmer actually had a condition that might have been revealed by obtaining that information, it only matters whether Defendant "assessed" for those conditions that may or may not have even existed. (Doc. 32, n. 11.)

Defendant is unaware of any authority establishing the right to bring an EMTALA claim arising out of a failure to screen for conditions that did not exist, irrespective of whether those conditions would be considered "emergent." Much like the plaintiff in *Koel*, no effort is made to explain what difference these alleged "deviations" make in the overall analysis. As this Court stated in *Koel*, "This is not a situation where Plaintiff received no medical screening at all. To the contrary, Plaintiff was seen by multiple health professionals who administered multiple tests in an effort to diagnose the injury and determine the recommended treatment." 2023 U.S. Dist. LEXIS 181916 at *19-20. Even if Plaintiff could plausibly allege that she was in active labor that was undetected, that allegation amounts to a claim of inaccurate and inadequate diagnosis that cannot sustain an EMTALA claim. *See Palmer v. Shawnee Mission Med. Ctr., Inc.,* 355 F.Supp.3d 1003, *1019 (D. Kan. Nov. 8, 2018).

The alleged "deviations" complained of, if true, are certainly *de minimis* if they have no relation to a medical condition that Ms. Farmer actually had. But she had a medical screening nonetheless. Plaintiff's own allegations state that these purported "deviations" are immaterial, because Plaintiff claims that the diagnosis that *was* made required a very specific procedure to "stabilize" that condition. As should be suggested by the attempt to manufacture new facts to

[1] Plaintiff goes on to state that Ms. Farmer actually reported pain to a nurse but complains that she was not asked to "rate her pain." (Doc. 32

survive a motion to dismiss, a "failure to screen" claim simply has no factual or legal merit in this situation. A "failure to diagnose" claim is not proper under EMTALA. *Repp v. Anadarko Mun. Hosp.*, 42 F.3d 519, 522 (10th Cir. 1994).

**II. Plaintiff's response reinforces the lack of merit in her "failure to stabilize" claim.**

Plaintiff's response to Defendant's motion to dismiss the "failure to stabilize" claim is internally inconsistent and difficult to follow. On one hand, she argues against dismissal because she contends that whether treatment can be considered "stabilizing" is a question of fact that requires proof by expert testimony. (Doc. 32, p. 15.) Somehow, that statement is immediately followed by arguing that Defendant "refused to provide Ms. Farmer *any care whatsoever*," whether considered "stabilizing" or not. (Id. emphasis in original.) She then argues that "stability" is a *question of law*, making it impossible to reconcile these inherently contradictory positions. Regardless, the entire argument has the appearance of an attempt to create a distraction.

The issue that Plaintiff now attempts to portray as fact-intensive was not portrayed in that manner in the Complaint. Plaintiff went so far as to ask the Court to enter *declaratory judgment* that PPROM is, in all cases, an unstable "emergency medical condition," and that in all such cases the *only* treatment that can be considered "stabilizing" is "emergency abortion." (Doc. 1, p. 3.) In fact, Plaintiff specifically argued for a declaration that "Ms. Farmer was *entitled* to this emergency abortion care under state and federal law," with the less than subtle intention of having this ruling converted into an entitlement for *all* patients, irrespective of any other clinical particulars.[2] In the face of that express request for relief, Plaintiff apparently tries to convince the Court that she has requested no such thing, accusing Defendant of offering a hyperbolic "parade of horribles" that are exceedingly unlikely. As Plaintiff puts it in her response, all she asks is for affirmation of a

[2] See *ACLU v. Trinity Health Corp.*, 178 F. Supp. 3d 614 (E.D. Mich. Apr. 11, 2016), where the plaintiff attempted to certify a class action and seek declaratory judgment on remarkably similar claims.

physician judgment that was already made in this very specific case. (Doc. 32, n. 14.) In light of the fact that declaratory judgments are typically sought *before* an "injury-in-fact" has occurred, Plaintiff's argument is transparently without merit.

**III. Plaintiff states no valid legal claim for relief under the Kansas Act Against Discrimination.**

In their motion to dismiss, Defendant contended that Plaintiff's Complaint failed to state a valid claim for relief under the Kansas Act Against Discrimination because the Kansas Supreme Court has held that "pregnancy discrimination" is not interchangeable with "sex discrimination." *See Harder v. Kan. Commission on Civil* Rights, 225 Kan. 556, 558 (1979). In her Response, Plaintiff urges the Court to instead rely on *Kan. Gas & Elec. Co. v. Kan. Com. on Civil Rights*, 242 Kan. 763, 768, 750 P.2d 1055, 1058 (1988) and K.A.R. 21-32-6, yet the reasoning for making this suggestion is entirely unclear. In *Kan. Gas & Elec.*, a case brought by a man, the Supreme Court held that allowing pregnancy leave was *not* discrimination, simply because it was a condition that only one sex could experience. Contrary to Plaintiff's suggestion, the Supreme Court did not find that "discrimination" *against* a pregnant woman was implicitly discrimination based on sex. Instead, it stated the obvious: pregnancy is a condition unique to women, therefore sex is necessarily implicated. That does not mean that accommodating the condition equates to discriminating against the sex that cannot acquire the condition. *Id* at 768.

Notably, the Court did not even address *Harder*, much less depart from it. Furthermore, Plaintiff herself acknowledges that the Kansas Human Rights Commission has not adopted any similar regulations in a public accommodation context. Plaintiff has provided the Court with absolutely no basis for a finding that failing to provide abortion care in a specific clinical circumstance constitutes "sex discrimination" under Kansas law. There is no reason to certify questions to the Kansas Supreme Court to have them restate what has already been said.

Respectfully submitted,

SIMPSON, LOGBACK, LYNCH, NORRIS, P.A.

By: */s/ Trevin E. Wray*

Trevin E. Wray, KS #21165
Jaime L. Whitt, KS #26986
Kemper A. Bogle, KS #29388
10851 Mastin St., Suite 1000
Overland Park, KS 66210
(913) 342-2500
(913) 342-0603 (Facsimile)
twray@slln.com
jwhitt@slln.com
kbogle@slln.com

and

Abhishek S. Kambli, KS #29788
Deputy Attorney General
Office of Kansas Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, KS 66612-1597
(785) 368-8197
(785) 296-3131 (Fax)
Abhishek.kambli@ag.ks.gov
ATTORNEYS FOR DEFENDANT
UNIVERSITY OF KANSAS HOSPITAL
AUTHORITY

**CERTIFICATE OF SERVICE**

I hereby certify that on the 11th day of November 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and a copy was sent via electronic mail to all parties having entered an appearance in the action.

*/s/ Trevin E. Wray*
Attorney